UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN A.,

                Plaintiff,

    v.

ANDREW M. SAUL,
Commissioner of Social Security,[1]

                Defendant.

CASE NO. C18-5982-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, this matter is REMANDED for further administrative proceedings.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1967.[2] He completed high school and some trade school classes, and previously worked as a tool maker and forklift operator. (AR 170, 194.)

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted for Nancy A. Berryhill as defendant in this suit.

[2] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff protectively filed an application for DIB on February 22, 2016, alleging disability beginning May 29, 2013. (AR 302-03.) His application was denied initially and on reconsideration.

On September 11, 2017, ALJ Malcolm Ross held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 164-200.) On February 13, 2018, the ALJ issued a decision finding plaintiff not disabled. (AR 16-28.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on October 31, 2018 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found the following impairments severe: cervical spondylosis and stenosis, status post four surgeries resulting in C5-C6 fusion; left shoulder abnormality, status post-surgical procedures; depression; and anxiety. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform

light work, with the following restrictions:  never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs and crawl; frequently balance, stoop, kneel, and crouch; occasionally reach overhead with bilateral upper extremities; frequently handle and finger with non-dominant left hand; occasional exposure to extreme cold, vibrations, and hazards, such as heights and machinery; occasional interaction with co-workers and members of public; and simple, routine, and repetitive tasks, in a work environment free from fast-paced production requirements.  With that assessment, the ALJ found plaintiff unable to perform his past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a housekeeper, small products assembler, and mail clerk.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.")  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in failing to address his somatic symptom disorder at step

two and beyond and in considering his symptom testimony. He requests remand for further proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

Somatic Symptom Disorder

The record contains a May 2017 diagnosis of somatic symptom disorder, predominant pain, persistent, by examining doctor Michael Friedman, DO (AR 1215), and other evidence suggesting pain level out of proportion to objective findings (*see, e.g.*, AR 1114, 1278). (*See also* AR 955, 958 (Dr. John Allen, in July 2016, included "[s]omatic symptoms/disorders: endorsed, neck pain" in past medical history); AR 705 (February 2017 physical therapy report noting plaintiff's "strong somatic focus with fear and avoidance behaviors"); and AR 1215 (Dr. Friedman, on mental status examination, found plaintiff's thought processes paranoid and with "a somatic focus that has a quasi-delusional quality to it.")) The ALJ did not identify or discuss somatic symptom disorder at step two. Plaintiff avers error in failing to find this impairment severe and in subsequently rejecting his symptom testimony based on allegations of pain and limitations out of proportion to the objective findings and objective findings "as much somatic as anatomic in origin." (AR 18-20, 22-23.)

The Commissioner asserts plaintiff inadequately points only to a diagnosis of somatic pain disorder (AR 1215), without evidence this impairment significantly limited his ability to perform basic work activities. The Commissioner notes Dr. Friedman concluded plaintiff did not have an impairment rating for his worker's compensation claim. (AR 1218.) She maintains that, because the ALJ considered plaintiff's allegations of symptoms related to this impairment when forming the RFC, plaintiff cannot show harm.

At step two, a claimant must make a threshold showing his medically determinable

impairments significantly limit his ability to perform basic work activities. *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28). Neither a statement of symptoms, nor a diagnosis alone suffices to establish a severe impairment. *See* 20 C.F.R. § 404.1521; SSR 96-4p; *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). A claimant must show his medically determinable impairments are severe.

The inquiry at step two is, at the same time, merely a de minimis screening device. *Smolen*, 80 F.3d at 1290 (citing *Bowen*, 482 U.S. at 153-54). It serves to screen out weak or groundless claims, not to identify the impairments to be considered in assessing a claimant's RFC. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). An ALJ must, in fact, consider limitations and restrictions imposed by all impairments, whether or not severe, in determining RFC. *Id*. at 1049 (citing SSR 96-8p). Where an ALJ decides step two in a claimant's favor and takes all impairments into account at step four, a claimant cannot show prejudice. *Id*. As such, even if an ALJ errs in failing to find an impairment severe at step two, such error is properly deemed harmless where the limitations associated with the impairment are considered at step four. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

The mental disorder listings explain that somatic symptom and related disorders "are characterized by physical symptoms or deficits that are not intentionally produced or feigned, and . . . cannot be fully explained by a general medical condition, another mental disorder, the direct effects of a substance, or a culturally sanctioned behavior or experience[,]" with symptoms and signs that may include, *inter alia*, "pain and other abnormalities of sensation, gastrointestinal

symptoms, fatigue, a high level of anxiety about personal health status, abnormal motor movement, pseudoseizures, and pseudoneurological symptoms, such as blindness or deafness." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00B(6). Criteria necessary to meet the listing includes medical documentation of "[s]ymptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder; [o]ne or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or [p]reoccupation with having or acquiring a serious illness without significant symptoms present." *Id*., § 12.07 (satisfaction of the listing also requires an extreme limitation of one or marked limitation of two areas of mental functioning, as set forth in 12.00F).

The ALJ did not properly consider the evidence associated with a somatic symptom disorder. He did not omit discussion of an impairment at step two while taking related limitations into account at step four. Rather than considering limitations associated with a somatic symptom disorder, the ALJ utilized evidence associated with such an impairment as a reason for rejecting plaintiff's testimony as to the intensity, persistence, and limiting effects of his symptoms. The ALJ found "exaggerated symptoms" to undermine the persuasiveness of plaintiff's statements regarding the severity of his impairments, particularly with the lack of corresponding objective clinical findings. (AR 22.) He noted multiple medical sources found the pain level endorsed out of proportion to objective findings, with examining physicians, psychologists, and physical therapists associated with a workers compensation claim proposing a somatic symptom disorder and reporting plaintiff reacting with severe pain to light touch. (*Id*. (citations omitted).) The ALJ pointed to independent neurological and orthopedic examinations concluding, in May 2017, that plaintiff's pain and alleged disability were disproportionate to objective findings. (*Id*. (citing AR 1278-79).) He described the longitudinal treatment record as regularly describing plaintiff as being

in no acute distress in his clinical presentation, while routinely endorsing very high pain intensity levels, with no treatment notes to reconcile this discrepancy, and plaintiff's testimony of "being sensitive to physical pain," with his pain symptoms contributing to his emotional distress.  (AR 23 (citations omitted).)  The ALJ identified inconsistencies in the record not readily explained by objective findings concerning strength in the left upper extremity and concluded: "However, given the previous findings of somatization, marked give-way weakness of physical examination, and positive Waddell's signs, there is strong reason to believe that the claimant's left upper extremity weakness is as much somatic as anatomic in origin."  (AR 23.)

The ALJ's subsequent discussion of plaintiff's mental impairments does not mention somatic symptom disorder or any associated limitations.  (AR 24-25.)  He discusses depression, anxiety, and substance abuse, and, finding the depression and anxiety severe, limits plaintiff to occasional interaction with co-workers and the public and simple, routine, and repetitive tasks, with no fast-paced production requirements.  (AR 24-25.)  In assessing opinion evidence, the ALJ gave great weight to the May 2017 opinions that plaintiff's pain and disability are disproportionate to objective findings of record.  (AR 25.)  The ALJ did not mention the report from Dr. Friedman, which included the somatic symptom disorder diagnosis, stated plaintiff "may have a difficult time keeping his emotions under control and would have a hard time interreacting with the public[,]" and found plaintiff "not at an impairment level[.]"  (AR 1215-18.)

As plaintiff states, the ALJ's error went beyond the failure to consider somatic symptom disorder at step two.  The error impacted the subsequent consideration of the medical evidence, plaintiff's symptom testimony, the RFC assessment, and the ultimate decision of non-disability. The ALJ did not consider whether a somatoform disorder, even if not severe, could have caused the limitations alleged and any impact on plaintiff's RFC and the remainder of the decision.  Nor

did he explain why the evidence relied on as detracting from plaintiff's symptom testimony did not support or was not consistent with a somatic symptom disorder. The ALJ's errors cannot be deemed harmless because it is not clear what, if any, impact might be found with proper consideration of the evidence. The ALJ should reconsider the evidence associated with a somatic symptom disorder at step two and beyond.

Because the ALJ's errors implicate the assessment of plaintiff's symptom testimony as discussed above, the Court declines to separately address all of the arguments raised by plaintiff challenging that assessment. However, the Court notes that the Commissioner appears to concede the ALJ mischaracterized a July 2016 treatment note about pain behaviors. (*See* AR 22, 953.) The Court also agrees with plaintiff's contention evidence he worked in some capacity for several months following his original injury (*see* AR 1147) should be, at the least, considered in conjunction with the fact he subsequently underwent multiple surgeries on his neck and shoulder. The ALJ should reassess plaintiff's symptom testimony as a whole on remand.

The Court also notes that the ALJ did not address a March 2016 lay statement provided by plaintiff's sister. (*See* AR 347-54.) The ALJ should address this evidence on remand.

## **CONCLUSION**

For the reasons set forth above, this matter is REMANDED for further proceedings.

DATED this 26th day of June, 2019.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 8